Marc R. Stanley, Roger Leon Mandel, Michelle Heron Galindo, Stanley Mandel & Iola, Dallas, TX, T. Michael Reed, Casey Gerry Casey Westbrook, Reed & Hughes, San Diego, CA, Marc Schechter, Hinchy Witte Wood Anderson & Hodges, San Diego, CA, Suzanne Etpison, Casey Gerry Reed & Schenk, San Diego, CA, for James T. Courtney.

Henry Howard Robinson, Christopher Edward Howe, Kelly Hart & Hallman, Fort Worth, TX, George F. Cicotte, Karen E. Ford, Littler Mendelson, Denver, CO, James P. Baker, Littler Mendelson, San Francisco, CA, for American Airlines Inc, Air California Long Term Disability Income Plan for Flight Crews, NationsBank of Texas, NA, Metropolitan Life Ins. Co.

**James J. COURTNEY, et al., Plaintiffs,**

v.

**AMERICAN AIRLINES, INC.,
et al., Defendants.**

No. 4:97–CV–668–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 24, 1999.

*MEMORANDUM OPINION
and ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of defendant American Airlines, Inc., ("Amer-

ican")[1] for summary judgment, and the motion of plaintiffs, James J. Courtney and others similarly situated, for partial summary judgment.

The court held a hearing on the motions on January 26, 1999. Having expressed tentative thoughts as to the merits of the motions, the court invited the parties to consider whether the case could be settled before the court ruled on the motions. The parties asked for and received an extension of time to report on whether mediation should be ordered. By letter dated March 10, 1999, plaintiffs reported that no progress toward settlement had been made and that they were not of the opinion that mediation would be fruitful. By separate letter dated March 10, 1999, American reported that it generally favors, and requests the court to order, mediation. However, the court is not inclined to order mediation at this time. Therefore, the court is ruling on the pending motions. Nevertheless, the court expects the parties to continue to engage in good-faith settlement negotiations, and the court might well order mediation if settlement is not reached in the near future.

## I.

### Plaintiffs' Claims

On October 31, 1996, James J. Courtney filed his class action complaint, and on February 21, 1997, his first amended complaint, in the United States District Court for the Southern District of California. By order signed June 19, 1997, the action was transferred to the United States District Court for the Northern District of Texas. Upon transfer, the case was filed in the Dallas Division, and, by order signed August 8, 1997, it was transferred to the Fort Worth Division, where the case was assigned to the undersigned judge. On May 4, 1998, the court signed an agreed order certifying as the plaintiff class: "All participants in the Air California Long–Term Disability Income Plan for Flight Crews immediately prior to the 1987 merger between AirCal and American Airlines and their beneficiaries."

Plaintiffs allege: The AirCal LTD plan, an employee welfare benefit plan within the meaning of § 3(1)(A) (29 U.S.C. § 1002(1)(A)) of the Employee Retirement Income Security Act of 1974, as amended, (29 U.S.C. § 1001, *et seq.*) ("ERISA"), became effective on or about June 1, 1979, for the purpose of providing benefits for long-term disabilities suffered by eligible flight crew members employed by Air California, a California corporation, ("AirCal"). On or about April 30, 1987, AirCal and American merged, and the AirCal LTD plan terminated.[2] The AirCal LTD plan provided that in the event of its termination, the remaining assets of the plan, after provision for expenses, would first be used to provide disability benefits to all persons then entitled to receive such bene-

---

**1.** As filed, the defense motion was brought on behalf of then defendants Air California Long–Term Disability Income Plan for Flight Crews ("AirCal LTD plan"), NationsBank, as Trustee of the Long–Term Disability Income Plan for Flight Crews, and Metropolitan Life Insurance Company, as Administrator of the Long–Term Disability Income Plan for Flight Crews, as well as American Airlines, Inc. Since the filing of the motion, all defendants other than American Airlines, Inc., have been dismissed from the action. Throughout this memorandum opinion and order the court discusses the contentions of the parties as though American Airlines, Inc., had been the sole defendant throughout the litigation.

**2.** The allegations of paragraph 23 of the amended complaint could be interpreted to be an assertion that after the merger between AirCal and American, an amendment to the long-term disability plan American carried for its employees incorporated the AirCal LTD plan into the American plan, which, if taken literally, would mean that the plaintiffs have alleged that the AirCal LTD plan did not terminate at the time of the merger, but, instead, was continued as a part of the plan American carried for its employees. However, the court understands that plaintiffs take the position that the AirCal LTD plan terminated when AirCal and American merged in 1987; and, the court is giving plaintiffs the benefit of an interpretation of their complaint that is consistent with such a contention.

fits, next for pending claims, and finally to provide disability, health, medical, or similar benefits for participants and their beneficiaries until the trust fund is exhausted. In or about April 1994, the AirCal LTD plan made payment of all amounts that were owed by way of disability benefits to persons entitled to receive such benefits on the date of termination of the plan. Approximately 2.3 million dollars remain in the trust fund, but the amount is decreasing. Notwithstanding demands by plaintiffs, they have not received any assurances that the remaining assets of the plan will be applied as the plan language contemplates upon termination of the plan, nor have the remaining assets of the plan been used to provide benefits for participants in the plan.[3]

Count I of the complaint asserts a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Basically, plaintiffs claim that once the plan no longer owed disability benefits to persons entitled to receive such benefits at the date of termination of the plan, the assets of the plan should have been "distributed as provided in the plan instrument." First Am.Compl. at 10.

Count II asserts a claim of breach of fiduciary duty under 29 U.S.C. §§ 1105 and 1109, contending that by retaining the assets of the AirCal LTD, and by its failure to distribute the remaining assets of the plan "in accordance with the Plan document and the Internal Revenue Code Regulations," American has breached its "fiduciary duty to act with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries." *Id.* Plaintiffs allege that American became a fiduciary with respect to the plan at the time of the merger between AirCal and American.

Count III seeks injunction relief that would (a) require American to utilize the remaining assets of the AirCal LTD plan "to provide Plaintiffs benefits in a form

permissible under the plan," *id.* at 11, (b) prevent American from liquidating the plan or transferring, merging, distributing, or diverting trust assets remaining in the plan in violation of various provisions of ERISA and the terms of the plan, and (c) prevent American from taking any action affecting the plan or its assets that is prohibited by ERISA, the Internal Revenue Code, or both.

Count IV seeks declaratory relief that plaintiffs are entitled to their proportionate share of the assets remaining in the AirCal LTD plan, "to be distributed in a form and manner as directed under the Plan and Trust instrument." *Id.* at 12.

Count V is a breach of written contract claim, which appears to assert a contract cause of action based on the failure of American to provide the benefits to which plaintiffs say they are entitled under the AirCal LTD plan. Plaintiffs allege that they "entered into an agreement wherein [they] agreed to provide their continuous labor and services as employees of AirCal and subsequently American Airlines after the merger, and in exchange, AirCal, and subsequent to the merger, Defendant American, agreed to provide the employee benefits were which incorporated in the written agreement, the [AirCal LTD]." *Id.* Plaintiffs go on to allege in this count that in April 1994 the written agreement was breached when, after distributing the final benefit payment to the remaining disabled participant, American retained the remaining assets in the plan and continues to retain the remaining assets in the plan rather than to distribute such assets pursuant to the terms of the plan and the trust agreement.

Count VI seeks an accounting under the provisions of 29 U.S.C. § 1132(a)(3)(B), contending that plaintiffs are unable to determine the exact amounts of money due them from the AirCal LTD plan without

---

**3.** Implicit in the allegations is a contention by plaintiffs that American controls disposition of the remaining assets of the plan.

an accounting of the assets held in the plan.

By Count VII plaintiffs seek to recover attorneys' fees under the authority of 29 U.S.C. § 1132(g)(1).

## II.

*Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs seek judgment only on two grounds at this stage. First, they seek judgment that American is liable to them pursuant to 29 U.S.C. § 1132(a)(1)(B) for nonpayment of benefits from the residual assets of the AirCal LTD plan. Second, they seek judgment that American is liable for breach of fiduciary duty pursuant to 29 U.S.C. § 1109(a) and/or §§ 1132(a)(2) and (3).

## III.

*American's Motion for Summary Judgment*

American seeks judgment as a matter of law that plaintiffs take nothing on each of the claims asserted by them. Briefly, American contends that an agreement entered into July 9, 1987, between American and the Allied Pilots Association ("APA"), bearing the title "Merger Agreement between American Airlines, Inc., and Allied Pilots Association representing the Pilots of American Airlines, Inc.," ("merger agreement") served as an amendment of the AirCal LTD plan; that the provisions of the merger agreement control disposition of the remaining assets of the AirCal LTD plan, and no action has been taken in respect to those assets inconsistent with the provisions of the merger agreement; that all claims of plaintiffs are defeated by the provisions of the merger agreement; that American did not breach any fiduciary duty in negotiating the merger agreement; that plaintiffs' claim for breach of contract

is preempted by ERISA; that the court lacks subject matter jurisdiction because of preemption under the Railway Labor Act; and, that plaintiffs' claims are barred by limitations. American additionally urges that plaintiffs have no right to a jury trial.

## IV.

*Undisputed Facts*

Along with their summary judgment materials, the parties filed a document titled "Stipulated Facts."[4] In addition to agreeing to the authenticity of pertinent documents, the parties agree as follows:

The AirCal LTD plan was created in December 1980 pursuant to collective bargaining between AirCal and the International Brotherhood of Teamsters. The plan and the trust established under the plan were intended to qualify as a plan and trust of a voluntary employee's association within the meaning of Internal Revenue Code § 501(c)(9) and the regulations issued thereunder and to comply with the applicable requirements of ERISA. The trust that was to serve as the funding vehicle for the plan was created in December 1980 by a document titled "Trustee Agreement Under the Air California Flight Crew Long–Term Disability Income Plan," to which AirCal and a national bank in California were parties ("AirCal LTD VEBA Trust"). The AirCal LTD VEBA Trust was created as a result of collective bargaining and provides a mechanism for receiving contributions and making plan disbursements from the AirCal LTD plan. The AirCal LTD VEBA Trust was a tax-qualified trust under 26 U.S.C. § 501(c)(9).

AirCal flight crew members were represented by a union at all relevant times of their employment with AirCal. Local 2707 of the International Brotherhood of Teamsters, Airline Division, was the representative union from the effective date of the

---

4. The "Stipulated Facts" and documents referenced therein are included in the two-volume appendix to defendants' motion for summary judgment. The court will simply refer to "Ex. ___" if the parties have stipulated to the authenticity of the document referenced.

AirCal LTD plan, June 1, 1979, through November 30, 1983. Effective December 1, 1983, the representative union was the Air Line Pilots Association, International, AFL—CIO ("ALPA"), which represented the covered employees until June 30, 1987. Thereafter, the representative union was the APA, which also represents American's pilots.

Prior to August 1987, the AirCal LTD plan and trust were administered by a committee, as defined in § 1.04 of the Air-Cal LTD plan. The committee was comprised of management and union representatives.

American merged with AirCal on or about July 1, 1987. At the time of the merger, the majority of the flight crew employees of AirCal became employees of American. The merger agreement was a collectively bargained agreement. All participants in the AirCal LTD plan who went to work for American became participants in American's pilot retirement plan. The American Airlines, Inc., Pilot Retirement Benefit Program was created pursuant to collective bargaining between American and the APA. All employer-sponsored long-term disability benefits provided to former AirCal pilots employed by American arising on or after August 1, 1987, were provided by American's pilot retirement plan. After the 1987 merger, former AirCal pilots already receiving long-term disability benefits at the time of the merger continued to be eligible to receive those benefits under the AirCal LTD plan. From August 1, 1987, through April 1, 1994, the long-term disability benefits paid to disabled former AirCal pilots were paid from the separate AirCal VEBA account contained in the American Airlines, Inc., Group Life & Health Trust (the "H & W VEBA trust"), the subject of collective bargaining.

The last payment required to be made to a participant in the AirCal LTD plan who was eligible to receive disability payments at the time of the merger between AirCal and American was made in April 1994. In September 1995 a payment was made by American from the AirCal LTD plan assets in final settlement of a lawsuit that had been filed against the AirCal LTD plan and American by a person who was receiving disability benefits under the AirCal LTD plan at the time of the merger between AirCal and American. During August 1996, the remaining assets in the AirCal LTD plan were transferred to the H & W VEBA trust. In August 1996, American was reimbursed from the H & W VEBA trust for health and medical benefits it provided between April 1994 and August 1996 to former AirCal pilots who were either active or retired American pilots. During April 1998, the August 1996 transaction was reversed and approximately 4.1 million dollars was returned to the AirCal LTD plan.

No cash distribution has been made to any member of the class on whose behalf this suit is being prosecuted from the assets remaining in the AirCal LTD plan since the payment was made in settlement of the lawsuit in September 1995. Since the 1987 merger, American has exercised sole discretion and control over the disposition of the AirCal LTD plan assets. American has acted as the plan administrator and plan sponsor of the former Air-Cal LTD plan since the merger in 1987. Plaintiffs have exhausted their administrative remedies provided in the AirCal LTD plan. They have not submitted this dispute to the Railway Labor Act Adjustment Board.

The AirCal LTD plan provides, in pertinent part:

Article VI

.      .      .      .      .

6.03 *Irrevocability of Company Contributions.* All contributions made by the Company to the Trust shall be irrevocably appropriated for the exclusive benefit of Participants as provided in the Plan, and no part of the Trust Fund shall revert to the Company or be used for, or diverted to, purposes other than

the exclusive benefit of such Participants. . . .

. . . . .

6.05 *Effect of Bankruptcy and Other Contingencies Affecting the Company.* In the event the Company . . . is . . . merged with another company, . . . the Plan shall be terminated and the Trust Fund shall be distributed and applied as provided in Article X hereof; provided, however, in the event the Company is . . . merged with another company . . . , provision may be made by which this Plan may be continued by the successor to the Company . . . , and in that event such successor . . . shall be substituted for the Company hereunder.[5]

. . . . .

Article X

. . . . .

10.01 *Amendment or Termination of the Plan.* The Company and Union expect the Plan to be permanent, but since future conditions cannot be anticipated or foreseen, the Plan may be amended, restated or terminated at any time pursuant to the written agreement of the Company and Union or by action of the Committee on behalf of the Company and Union.

10.02 *Restrictions on Amendments.* No amendment shall be made at any time, the effect of which would be:

(a) To cause any assets of the Trust Fund to be used for or diverted to purposes other than providing benefits to the Participants and defraying reasonable expenses of administering the Plan and Trust. . . .

. . . . .

10.04 *Effect of Plan Termination.*

(a) In the event of the termination of the Plan, the assets in the Trust Fund, after provision for expenses,

shall be used first to provide Disability benefits for all Disabled Participants then receiving or entitled to receive such benefits; then for pending claims; then any remaining assets shall be used to provide disability, health, medical or similar benefits for Participants and their beneficiaries until the Trust Fund is exhausted.[6]

Ex. A, AirCal LTD plan.

Included in the AirCal LTD VEBA Trust is a provision that:

1.3 *Exclusive Benefit of Participants.* At no time prior to the satisfaction of all liabilities under the Plan with respect to those defined therein as "Participants" shall any part of the Fund be used for, or diverted to, purposes other than the exclusive benefit of the Participants and their beneficiaries. In the event of termination of the Plan, the assets in the Trust Fund less expenses of termination shall be used first to provide disability benefits for all disabled Participants then receiving or entitled to receive benefits under the Plan; then for pending claims; then any remaining assets shall be used to provide disability, health, medical or similar benefits for Participants and their beneficiaries until the Trust Fund is exhausted.

Ex. B, AirCal LTD VEBA Trust at 3.

The merger agreement contains the following provisions:

1. *Definitions*

. . . . .

D. "Former AirCal Pilots" as used herein shall mean those Pilots formerly in the service of AirCal whose names appear on the AirCal Pilot Seniority List on July 1, 1987, and who will be treated as members of the class or craft of Pilot, represented by APA, under the current

---

**5.** The summary judgment evidence establishes that no provision was made by which the plan was continued by American as successor to AirCal.

**6.** The parties agree that there are no participants now receiving or entitled to receive benefits. Nor are there any pending claims by disabled participants.

American/APA Agreement covering such employees.

. . . . .

3. *Purpose*

This Merger Agreement is entered into for the purpose of applying the provisions of the current American/APA Agreement, *subject* to the terms and conditions contained herein, to the Former AirCal Pilots as defined in paragraph 1.D. above.

The parties have entered into this Merger Agreement to accomplish this application and so as to accomplish a fair and equitable integration of Former Air-Cal Pilots into the American Airlines/AirCal merged operation under the provisions of the current American/APA Agreement.

4. *Basic Principles of Contract Application*

. . . . .

O. *Supplement F—Pension Plans*

. . . . .

5. Long Term Disability claims by Former AirCal Pilots incurred prior to August 1, 1987 shall be handled under the Air Cal Pilot Long Term Disability Plan (Article 30 of the current Air-Cal/ALPA Agreement). Disability claims incurred by eligible Former Air-Cal Pilots on or after August 1, 1987 shall be handled in accordance with Supplement F(1) of the current American/APA Agreement.

. . . . .

T. *AirCal/ALPA Agreement, Letters of Agreement, and Practices*

The current AirCal/ALPA Agreement, as made and entered into on February 21, 1985 and effective on December 1, 1985, all Letters of Agreement appended thereto, all side Letters of Agreement, and all practices in effect under said Agreement shall become null and void

effective August 1, 1987, unless otherwise indicated herein.

Ex. D at 2–3, 19–20.

V.

*The Core Issues*

At the core of the dispute between the parties are the issues (1) whether the Air-Cal LTD plan terminated at the time of the merger of AirCal and American, and, if so, (2) whether the remaining assets of the plan must be used consistent with the provisions of the plan governing use of the assets upon termination of the plan. Countervailing issues are whether (1) the provisions of the merger agreement constituted an amendment to the AirCal LTD plan and (2) whether the provisions of the merger agreement determine the proper uses to be made of the remaining assets of the plan.

Plaintiffs' case cannot lift off the ground unless the conclusions are reached that the AirCal LTD plan terminated as a result of the corporate merger and that the use of the remaining assets of the plan is dictated by § 10.04(a) of the plan. Resolution of those issues in favor of the plaintiffs will not necessarily take plaintiffs where they would like to go in this case, but would provide the springboard for other contentions made by plaintiffs. On the other hand, unless American can prevail on its contentions that the merger agreement amended the AirCal LTD plan and that the provisions of the merger agreement determine the proper disposition to be made of the remaining assets of the plan, it will be without the necessary predicates for its main defensive arguments.

The centerpiece of American's arguments in support of its motion for summary judgment is that the merger agreement served as an amendment to the AirCal LTD plan. To reach that conclusion, it first argues that by the merger agreement the bargaining parties agreed to render the AirCal LTD plan "null and void" except for long-term disability

claims of plan participants incurred prior to August 1, 1987. Defs.' Br. in Supp. of Mot. for Summ.J. at 8. How the plan could have been rendered "null and void" and then amended American does not explain. And, no other conclusion can be reached but that the AirCal LTD plan terminated upon the merger of American and AirCal. The language of the pertinent documents supports no other conclusion.

American relies, in particular, on language of the merger agreement that:

The current AirCal/ALPA Agreement, as made and entered into on February 21, 1985 and effective on December 1, 1985, all Letters of Agreement appended thereto, all side Letters of Agreement, and all practices in effect under said Agreement shall become null and void effective August 1, 1987, unless otherwise indicated herein.

Ex. D, Merger Agreement at 20, ¶ T. As plaintiffs point out, the AirCal LTD plan is not embodied in the AirCal/ALPA agreement, nor is the plan a side letter agreement or practice under said agreement. See Ex. F, AirCal/ALPA Agreement. The AirCal LTD plan is separate and independent. Moreover, there is no evidence of any intent to amend the AirCal LTD plan in the manner prescribed or authorized by the plan, much less any evidence of an attempt to do so.

■ Put simply, there is no fact at issue in the summary judgment record that, if resolved in favor of American, would defeat the contentions of plaintiffs that the AirCal LTD plan terminated by reason of the merger of AirCal with American and that § 10.04(a) of the plan governs disposition of the plan assets. The undisputed facts established by the summary judgment record support those contentions of plaintiffs. Therefore, the court rules that the AirCal LTD plan terminated by reason of the merger of AirCal with American and that the remaining assets of the plan must be used by American to provide disability, health, medical, or similar benefits for the members of the class until such assets are exhausted. As a corollary, the court rules that the merger agreement did not amend the AirCal LTD plan, and that none of the provisions of the merger agreement determines the proper disposition to be made of the remaining assets of the plan.

Moreover, American is incorrect in its assertion that the document titled "Amendment No. 1 to the American Airlines, Inc. Long–Term Disability Trust," Exhibit G, had the effect of merging the AirCal LTD plan into the long-term disability plan American had for its employees. At best, Amendment No. 1 was a unilateral act on the part of American that did not dilute the rights of plaintiffs under the AirCal LTD plan. Furthermore, by the time Amendment No. 1 was made, the AirCal LTD plan had already terminated, and the provision of the plan, § 10.04(a), that defined appropriate disposition of plan assets had already become operative.

## VI.

### The Remaining Aspects of Plaintiffs' Motion for Partial Summary Judgment

The court is not prepared to make definitive rulings predicated on the summary judgment record in favor of plaintiffs based on the grounds of their motion for partial summary judgment beyond those that have been made in the immediately preceding section of this memorandum opinion and order. The summary judgment record is insufficient to enable the court to make a determination of the precise nature of the benefits to which plaintiffs are entitled pursuant to § 10.04(a) of the AirCal LTD plan. Apparently plaintiffs maintain that the remaining assets of the plan should be distributed to them in the form of cash payments. Nothing in the existing record of this action would persuade the court that plaintiffs are correct in making such a contention. Until the court is in a position to define the precise nature of the benefits to which

plaintiffs are entitled, the court is not in a position to make further rulings in favor of plaintiffs on either of the grounds of their motion. Therefore, the court is denying plaintiffs' motion except to the extent that rulings have been made in favor of plaintiffs in section V. of this memorandum opinion and order.

## VII.

### *The Breach of Contract Claim is Preempted by ERISA*

American urges by its motion that plaintiffs' breach of contract claim (Count V) is preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Plaintiffs apparently recognize this to be the case, since they make no response to this ground. Therefore, the court is dismissing the breach of contract claim.

## VIII.

### *Plaintiffs' Claims Are Not Preempted by the Railway Labor Act*

Another ground of American's motion is that the court lacks subject matter jurisdiction over this action because it is preempted by the · Railway Labor Act. Plaintiffs question American's motive in including this ground "[a]s a virtual afterthought, and clearly not as a serious proposition." Pls.' Resp. at 36. Having exhaustively studied the matter, the court is convinced that plaintiffs' claims have nothing to do with the interpretation of collective bargaining agreements. *See* 1/26/99 Tr. at 45–46. Mere mention of a pension plan in a general collective bargaining agreement is insufficient reason to construe the pension plan as part and parcel of the general agreement. *See Printing Specialties and Paper Products, Local 680 v. Nabisco Brands, Inc.,* 833 F.2d 102 (7th Cir.1987); *RCA Corp. v. Local 241,* 700 F.2d 921, 927 (3d Cir.1983). By its own terms, the AirCal LTD plan terminated upon the merger of AirCal with American and the benefits to which plaintiffs are entitled are defined in the plan and not by any other agreement.

## IX.

### *Plaintiffs' Claims Are Not Barred by Limitations*

American alternatively urges that plaintiffs' claims are barred by limitations. The facts to which the parties have stipulated belie any argument that plaintiffs' claims are time-barred. *See, e.g.,* Stipulated Facts, ¶¶ 29 and 30; *Hall v. National Gypsum Co.,* 105 F.3d 225, 230 (5th Cir. 1997).

## X.

### *Plaintiffs Are Not Entitled to a Jury Trial*

American contends that plaintiffs are not entitled to a jury trial. *See Borst v. Chevron Corp.,* 36 F.3d 1308, 1324 (5th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995). Plaintiffs apparently agree, as they fail to address the issue in their summary judgment response. The court rules that plaintiffs are not entitled to a jury trial in this case.

## XI.

### *The Other Grounds of American's Motion*

Except to the extent the court has ruled in favor of American as to grounds of its motion for summary judgment in preceding parts of this memorandum opinion and order, the court is unable to rule for American on any of the grounds of its motion for summary judgment. Therefore, the court denies American's motion to the extent that the court has not expressly ruled in favor of American on features of its motion.

## XII.

### *ORDER*

For the reasons discussed herein,

The court ORDERS that American's motion for summary judgment be, and is hereby, granted in part, and that plaintiffs' claim for breach of contract (Count V) be, and is hereby, dismissed as preempted; and

The court further ORDERS that plaintiffs' motion for partial summary judgment be, and is hereby, granted in part, and the court hereby ORDERS and DECLARES that (a) the AirCal LTD plan terminated pursuant to § 6.05 of the plan as a result of the merger of AirCal and American and (b) the assets of the AirCal LTD plan must be used, as stated in § 10.04(a) of the plan, to provide disability, health, medical or similar benefits for the plaintiff class until the trust fund is exhausted; and

The court further ORDERS that any remaining issues to be determined in this action will be tried to the court.